**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **CHRISTOPHER HENRY POTTER,** | ) | |
| **Petitioner,** | ) | |
| | ) | **Criminal No. 1:03cr595** |
| **v.** | ) | |
| | ) | **Civil Action No. 1:06cv157** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | |

**ORDER**

The matter is before the court on petitioner's *pro se* motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. Oral argument is dispensed with because the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid in the decisional process.[1]

**I.**[2]

On January 8, 2004, petitioner Christopher Henry Potter knowingly and voluntarily waived his right to an indictment and pled guilty to a one-count criminal Information charging him with conspiracy to distribute five hundred (500) grams or more of cocaine, in violation of 21 U.S.C. § 846. The offense conduct is easily summarized. In January 2003, agents from the Drug Enforcement Administration (DEA) arrested Reynaldo Acevedo and Alvaro Gonzalez for conspiracy to distribute 500 grams or more of cocaine after having conducted several controlled purchases of

[1] *See United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir. 1988) (recognizing that "[a] hearing is not required...on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief").

[2] The facts recited here are derived chiefly from the Statement of Facts entered into as part of petitioner's plea agreement, supplemented by additional facts set forth in the parties' respective briefs.

cocaine from Acevedo and Gonzalez. Following their arrests, both Acevedo and Gonzalez were placed on pre-trial release by the assigned magistrate judge and in approximately February or March 2003, Acevedo absconded to New Jersey. In May 2003, in an attempt to locate Acevedo, DEA agents conducted surveillance at Acevedo's last known address in Manassas, Virginia. In the course of the surveillance, agents observed Justiano Cruz engage in a drug transaction with an uncharged co-conspirator. Agents promptly arrested Cruz and obtained a search warrant for the Manassas home, ultimately seizing approximately 1.5 kilograms of cocaine and approximately $24,000 in U.S. currency from the residence. Subsequent investigation revealed that Acevedo had distributed multiple kilograms of cocaine in the Manassas area between 2000 and his arrest in January 2003. Agents also learned that while Acevedo was on pre-trial release, he transferred his cocaine trafficking business to Juanita Valerio and her husband, Justiano Cruz. To this end, Acevedo introduced his cocaine customers to Valerio in January or February 2003 and informed those customers that Valerio would thereafter be handling Acevedo's cocaine business. Cruz and Valerio were living in Acevedo's last known residence during the execution of the search warrant in May 2003.

Petitioner had been one of Acevedo's largest cocaine customers, having purchased cocaine in multiple-ounce quantities from Acevedo and his drug runners, including Gonzalez, from 2000 until Acevedo's and Gonzalez's arrest in January 2003. Petitioner and his girlfriend, Carla Broadus, then distributed this cocaine to customers in Manassas, Virginia. Following Acevedo's January 2003 arrest, petitioner and Broadus continued to purchase cocaine from Valerio and Cruz until the execution of the search warrant in May 2003. Petitioner, however, was in jail in Prince William County at the time of the search.

Following Cruz's arrest, Valerio recruited her brother, Felipe Valerio Plasencia, to travel

from New York to assist her in the drug trafficking business. Broadus continued to purchase heroin and cocaine from Valerio and Plasencia until June 2003. On June 6, 2003, however, Prince William County police officers arrested Plasencia in possession of a firearm and drug paraphernalia after he overstayed at a hotel in Manassas, Virginia. As a result of this arrest, Plasencia was housed at the Prince William County Adult Detention Center, where petitioner was then incarcerated.

In July 2003, petitioner approached prison authorities and reported that he had learned from fellow inmate Plasencia that there were undiscovered drugs hidden in Plasencia's seized property, located at the Prince William county property room. Petitioner further stated that he knew Plasencia "from the street" prior to his incarceration. Although petitioner did not tell authorities at the time, agents later learned that petitioner knew about the hidden drugs because his girlfriend, Broadus, had been in communication with Valerio and Plasencia about the undiscovered drugs. Agents also learned that petitioner did not know Plasencia outside of prison, as he claimed, but instead only learned of Plasencia through Broadus. Based on the information provided by petitioner, officers obtained a search warrant for the seized property and discovered approximately 80 grams of cocaine hidden in the false bottom of an ice tea container.

On November 24, 2003, a criminal complaint was filed against petitioner and Broadus charging them both with conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846. At the time the arrest warrant was issued, petitioner was in state custody at the Powhatan Correctional Facility and appeared in this District pursuant to a writ of habeas corpus *ad prosequedum* on December 9, 2003. Thereafter, on January 8, 2004, petitioner pled guilty to the one-count criminal information charging him with conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846.

The Presentence Investigation Report (PSIR) prepared by the Probation Officer classified

petitioner as a career criminal under U.S.S.G. § 4B1.1 based on two prior felony convictions, namely (i) a 2000 conviction in Prince William County for arson of personal property, and (ii) a 1996 conviction in Jefferson Parish, Louisiana for distribution of marijuana. This resulted in a recommended guidelines range of imprisonment of 188 to 235 months, based on a total offense level of 31 and a criminal history category of VI. Yet significantly, even without application of the career offender provisions, petitioner would still have been classified as a category VI given the nature and extent of his criminal history, although his total offense level would have been 29, rather than 31. Thus, had petitioner not been classified as a career offender in this case, the applicable guidelines range of imprisonment would have been 151 to 188 months, as opposed to 188 to 235 months.

Prior to sentencing, petitioner, by counsel, moved for a downward departure from the applicable sentencing guidelines range, pursuant to U.S.S.G. § 4A1.3, on the ground that petitioner's classification as a career offender overstated his criminal history. In doing so, petitioner conceded that the two convictions forming the basis of his career offender status — arson of personal property and distribution of marijuana — were properly classified as a crime of violence and a controlled substance offense within the meaning of the applicable career offender guidelines.[3] Yet, counsel nonetheless argued that these particular offenses were "relatively minor offenses" that took the case outside the heartland of career offender cases, specifically arguing (i) that marijuana "is much less

---

[3] Specifically, U.S.S.G. § 4B1.1 provides, in pertinent part, that

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) *the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense*.

U.S.S.G. § 4B1.1(a) (emphasis added).

of a serious controlled substance felony than that for substances considered to be harder drugs" and (ii) that "arson of an unoccupied vehicle is less onerous and dangerous than the more typical arson of a dwelling."

Given the nature and extent of petitioner's criminal history, including the fact that he was assessed a total of 17[4] criminal history points based on his various previous convictions,[5] petitioner's motion for a downward departure based on the alleged overstatement of his criminal history was denied. Yet, petitioner was nonetheless granted a seven-month reduction in the guidelines range of imprisonment set forth in the PSIR to award him credit for time served on the related state drug charge. Thus, on April 2, 2004, petitioner was sentenced to 181 months imprisonment on the instant offense — the bottom of the reduced applicable guidelines range — to be followed by five years of supervised release. At the time of sentencing, petitioner's term of imprisonment was ordered to run concurrently with the Prince William County Circuit Court sentence he was then serving for possession with the intent to distribute cocaine, pursuant to U.S.S.G. § 5G1.3. The judgment of conviction was ultimately entered in this case on April 12, 2004, ten days after the sentencing

---

[4] Although the PSIR lists 16 as the total of petitioner's criminal history points, this appears to be a mathematical error, as the sum of the various points assessed against petitioner is, in fact, 17.

[5] Specifically, in addition to numerous prior convictions for which no criminal history points were assessed, petitioner was assessed (i) one point for a 1993 conviction for possession of marijuana, (ii) two points for a 1995 conviction for obscenity, (iii) one point for a 1997 conviction for battery of a police officer, (iv) two points for a 1996 conviction for theft, (v) two points for a 1996 conviction for distribution of marijuana, (vi) one point for a 2000 conviction for contributing to the delinquency of a minor, (vii) one point for a 1998 conviction for possession of marijuana, (viii) one point for a 2000 conviction for driving under the influence and driving on a suspended license, and (ix) three points for a 2000 conviction for arson of personal property together with a 2003 revocation of probation in that case. Petitioner was assessed two additional criminal history points for committing the instant offense while he was serving a term of probation in the Prince William County Circuit Court, and one additional point for committing the instant offense while a bench warrant for his arrest was outstanding in the Prince William County Circuit Court.

hearing. Petitioner did not thereafter appeal his conviction or sentence as he had knowingly and voluntarily waived his appeal rights as part of his plea agreement.[6]

In May 2005 — approximately a year after sentencing — the government filed a motion for a reduction in petitioner's sentence pursuant to Rule 35(b), Fed. R. Crim. P., based on petitioner's substantial assistance to law enforcement authorities in the investigation and prosecution of other individuals. On June 3, 2005, the government's motion in this regard was granted and petitioner's 181-month custody sentence was reduced to 96 months, with all other terms and conditions of the original sentence to remain in full force and effect.

On February 9, 2006 — nearly two years after sentencing — petitioner filed the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. With respect to the timeliness of the motion, petitioner claims, *inter alia*, that his motion was timely because he was told by counsel that his conviction would not become final for purposes of triggering the one-year statute of limitations applicable to the filing of § 2255 motions until resolution of the government's motion for a reduction in petitioner's sentence under Rule 35(b), Fed. R. Crim. P. Petitioner further claims that in the event his conviction is deemed to have become final following sentencing and the entry of judgment in April 2004, (i) that the one-year statute of limitations should be excused because the government impeded his ability to file a timely § 2255 motion in this case, or (ii) that the doctrine

---

[6] Specifically, ¶ 6 of the Plea Agreement provides, in part, that

> the defendant knowingly waives the right to appeal the conviction and any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined)...on any ground whatsoever, in exchange for the concessions made by the United States in this plea agreement.

Plea Agreement, ¶ 6.

of equitable tolling should be invoked to allow the filing of this untimely § 2255 motion. As substantive claims, petitioner essentially argues (i) that application of the career offender enhancement, as well as additional enhancements for the specific drug quantity attributable to petitioner and possession of a firearm in connection with the instant offense, was erroneous and unconstitutional and (ii) that he was denied his Sixth Amendment right to the effective assistance of counsel in the course of the plea, sentencing and post-sentencing proceedings in this case. Both parties have fully briefed the issues raised in petitioner's § 2255 motion and the matter is now ripe for disposition.

## II.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), a one-year statute of limitations applies to all motions to vacate, set aside or correct sentence filed under 28 U.S.C. § 2255. Specifically, § 2255 provides that the one-year limitations period shall run from the latest of::

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

Application of this standard to the facts of this case compels the conclusion that petitioner's § 2255 motion is not timely under the statute. First, it is well-settled in the Fourth Circuit that a defendant's conviction becomes "final on the date upon which he decline[s] to pursue further direct appellate review." *United States v. Sanders*, 247 F.3d 139, 142 (4th Cir. 2001). In other words, because petitioner did not appeal his conviction and sentence in this case, his conviction became final on April 12, 2004, the date on which the judgment of conviction was entered. *See id.* (holding that when a defendant declines to pursue appellate review, the defendant's conviction becomes final on the date on which the judgment of conviction was entered). The instant § 2255 motion — delivered by petitioner to the appropriate prison officials no earlier than February 1, 2006, the date he signed the motion — thus falls well outside the one-year limitations period set forth in § 2255(1). Moreover, petitioner's argument that his conviction did not become final until disposition of the government's Rule 35(b) motion for a reduction in petitioner's sentence is both statutorily foreclosed[7] and contrary to established Fourth Circuit precedent.[8]

Nor is there any evidence in the record to support petitioner's allegation that governmental action prevented him from filing a timely § 2255 motion in this case. Indeed, petitioner's claims (i) that he was placed in a holding facility for four months after sentencing in this case pending completion of his cooperation and (ii) that he was then placed in a state institution where he

---

[7] Title 18 U.S.C. § 3582(b)(2) provides, in pertinent part, that "[n]otwithstanding the fact that a sentence to imprisonment can subsequently be...corrected pursuant to the provisions of rule 35 of the Federal Rules of Criminal Procedure...a judgment of conviction that includes such a sentence constitutes a final judgment for all other purposes," including the one-year limitations period applicable to the filing of § 2255 motions. 18 U.S.C. § 3582(b)(2).

[8] *See Sanders*, 247 F.3d at 142 (stating that "Congress did not intend for Fed. R. Crim. Pro. 35(b) motions to prevent convictions from becoming final for § 2255 purposes"); *United States v. Schwartz*, 274 F.3d 1220, 1224 (9th Cir. 2001) (citing *Sanders* for same principle).

allegedly had "no access to legal materials or a jailhouse lawyer knowledgeable of federal post-conviction laws" are clearly insufficient in this regard, as neither allegation amounts to an impediment created by "governmental action in violation of the Constitution or laws of the United States," as required to trigger application of § 2255(2). *See, e.g., Adkins v. United States*, 204 F.3d 1086, 1090 (11th Cir. 2000) (rejecting a petitioner's governmental impediment claim based on a prison lockdown that prevented him from using the law library where petitioner failed to show that the lockdown was unlawful).

Moreover, petitioner's claim that he was "induced to plead guilty by representations of the prosecution and his counsel" that his conviction would not become final until after the filing and disposition of the government's Rule 35(b) motion is wholly unsupported, self-serving and flatly refuted by the current record. Indeed, although petitioner failed to provide a sworn affidavit on his own behalf, petitioner's counsel has submitted such a sworn affidavit stating, *inter alia*, that he "did not inform [petitioner] that his conviction would not become final until a motion for reduction of sentence was filed...[and that] it was never [his] understanding or agreement with the United States that [petitioner's] conviction would not become final until a motion for reduction of sentence had been granted by the Court." Hutcheson Affidavit at ¶ 7. Nor was it ever petitioner's counsel's "understanding that the sentence imposed on April 2, 2004, was 'tentative' in any manner," as petitioner asserts. *Id.*[9]

---

[9] Counsel's affidavit is consistent with the language of the Plea Agreement, as well, which makes clear that the government never promised to file a Rule 35(b) motion for a reduction in petitioner's sentence in this case. *See* Plea Agreement at ¶ 13 (stating that "the United States reserves the right to seek any departure from the applicable sentencing guidelines....if, in its sole discretion, the United States determines that such a departure or reduction of sentence is appropriate"); *id.* at ¶ 18 (providing that "[t]he defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in writing in this plea agreement, to cause the defendant to plead guilty").

Finally, there is nothing in the record that warrants application of the doctrine of equitable tolling to relieve petitioner from the one-year statute of limitations otherwise applicable to the filing of a § 2255 motion. Indeed, this is not one of "those rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the one-year time limitation of Section 2255." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004).

**III.**

Notwithstanding the obvious untimeliness of petitioner's § 2255 motion, it is important to note that his substantive claims would nonetheless fail on the merits. Specifically, petitioner first argues that application of the career offender enhancement was erroneous and unconstitutional given that one of the underlying predicate felony convictions — arson of personal property — does not qualify as a crime of violence under U.S.S.G. § 4B1.2(a). Under the categorical approach announced in *Taylor v. United States*, 495 U.S. 575, 600 (1990) and *United States v. Kirksey*, 138 F.3d 120, 123 (4th Cir. 1998), the question whether a particular conviction constitutes a crime of violence under U.S.S.G. § 4B1.2(a) involves consideration of only two factors, namely (i) the fact of the prior conviction and (ii) the definition of the prior conviction. Here, the fact of petitioner's prior conviction is undisputed and the definition of arson of personal property under Virginia law likewise makes clear that it qualifies as a crime of violence under U.S.S.G. § 4B1.2(a)(2).[10] *See United States v. Velasquez-Reyes*, 437 F.3d 1227, 1231 (9th Cir. 2005) (holding that a conviction for second-degree arson, which includes arson of personal property, is categorically a crime of violence). Indeed, U.S.S.G. § 4B1.2(a)(2), as well as the commentary to U.S.S.G. § 4B1.2, specifically include "arson"

[10] Under Virginia law, individuals commit arson of personal property if they "maliciously, or with intent to defraud an insurance company or other person, set fire to or burn or destroy by any explosive device or substance, or cause to be burned, or destroyed by any explosive device or substance...any personal property." Va. Code § 18.2-81.

as an example of a crime of violence. *See* U.S.S.G. § 4B1.2 (recognizing that the term "crime of violence" includes an offense that "is burglary of a dwelling, *arson*, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another") (emphasis added).

Petitioner next contends that application of the career offender enhancement, as well as additional enhancements for (i) possessing a firearm in connection with the instant offense and (ii) conspiring to distribute between 3.5 and 5 kilograms of cocaine, violated the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *United States v. Booker*, 125 S. Ct. 738 (2005). In *Apprendi,* the Supreme Court held essentially that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. 466. Thereafter, the Supreme Court in *Booker* applied its *Apprendi* line of decisions to hold that the United States Sentencing Guidelines violated the Sixth Amendment to the extent that they allowed a defendant's sentence to be increased based on findings of fact made by a judge (other than a prior conviction) rather than by a jury beyond a reasonable doubt, and that the proper remedy was to render the Sentencing Guidelines advisory. *See Booker*, 125 S. Ct. at 755-67.[11]

On the record presented here, petitioner's *Apprendi*/*Booker* claim necessarily fails. As an initial matter, it should be noted that petitioner's original sentence of 181 months imprisonment was well below the forty-year statutory maximum applicable to his offense of conviction. *See* 21 U.S.C.

---

[11] Post-*Booker*, district courts are still required to make findings of fact in the course of the sentencing proceedings. Indeed, "a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines" and then "shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

§§ 841(b)(1)(B)(ii) (providing five year minimum and forty year maximum for conspiracy to distribute 500 grams or more of cocaine). The record also reflects that petitioner admitted to the facts forming the basis of the drug quantity and firearm enhancements in the course of the plea proceedings, despite his assertions to the contrary.[12] And, in any event, petitioner's reliance on *Booker* is misplaced as the Fourth Circuit has joined all other circuits to have addressed the issue in holding that *Booker* does not apply retroactively to cases on collateral review such as that presented here. *See United States v. Morris,* 429 F. 3d 65, 72 (4th Cir. 2005); *see also United States v. Hernandez*, 371 F. Supp. 2d 788 (E.D. Va. 2005) (holding that the *Booker* rule generally requiring that facts supporting an enhanced sentence be proved to a jury beyond a reasonable doubt or admitted by defendant did not apply retroactively so as to render timely defendant's otherwise time-barred § 2255 motion to vacate, set aside or correct sentence). It follows, therefore, that petitioner's request for relief in light of *Apprendi* and *Booker* must be denied.

Petitioner also claims that he was denied his Sixth Amendment right to the effective assistance of counsel in the course of the plea, sentencing and post-sentencing proceedings in this case. A two-prong test applies to ineffective assistance of counsel claims. *See Strickland v. Washington*, 466 U.S. 668, 688-89 (1984); *U.S. v. Lurz*, 666 F.2d 69, 78 (4th Cir. 1981). Specifically, a petitioner must show, first, that counsel's performance "fell below an objective standard of reasonableness," and second, that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 688. In this regard, to demonstrate prejudice, petitioner must overcome the strong presumption that counsel rendered "adequate assistance and made all significant decisions in the

---

[12] Specifically, in his written Statement of Facts, petitioner admitted that "[d]uring the course of the conspiracy, Potter carried a firearm and is responsible for distributing between three and one-half and five (3.5 - 5) kilograms of cocaine." Statement of Facts, ¶ 12.

exercise of reasonable judgment." *Id*. at 690.

In this case, petitioner specifically claims that he instructed his attorney to file a notice of appeal on his behalf following the initial sentencing hearing, as well as after the Rule 35(b) reduction hearing, but that counsel failed to do so. It is well-settled that counsel has a duty to file an appeal in a criminal case when a defendant specifically requests that such an appeal be filed on his or her behalf. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477, 483-84 (2000). And significantly, under current Fourth Circuit precedent, counsel's duty to file an appeal when specifically requested to do so exists even where, as here, a defendant has knowingly and voluntarily waived his right to appeal pursuant to a valid plea agreement. *See United States v. Kirby*, 36 Fed. Appx. 76 (4th Cir. 2002) (stating that counsel was obligated to file an appeal if defendant requested that he do so even if the defendant waived his appeal rights as part of a plea agreement and remanding the case to determine if defendant specifically requested counsel to file an appeal) (unpublished).[13] Yet here, petitioner's counsel has submitted a sworn affidavit contradicting petitioner's self-serving and unsupported allegations in this regard. Specifically, petitioner's counsel represents, under oath, as follows:

> Mr. Potter did not instruct me to appeal his sentence either at the time of the imposition of sentence on April 2, 2004, or after the Court granted a motion for a reduction of sentence on June 3, 2005. I am certain that no such conversations about an appeal of his sentence occurred because I would have remembered such a request and I would have cautioned Mr. Potter that such action would be in breach of his plea agreement. Such discussion or instruction simply never took place.

Hutcheson Affidavit, ¶ 10. Counsel further states, also under oath, that he and petitioner "*never* had any discussion regarding an appeal of [petitioner's] case." *Id.* at ¶ 7 (emphasis added). Petitioner

---

[13] The consequence of this rule is now becoming clear: Defendants are routinely claiming that they requested that an appeal be filed notwithstanding the appeal waiver, causing some defense lawyers to consider filing precautionary appeal notices in virtually every case.

failed to submit a sworn affidavit to the contrary and, in the absence of conflicting affidavits, an evidentiary hearing for the purpose of making a credibility assessment between petitioner and counsel is not required.

Moreover, although petitioner claims that he did not knowingly waive his right to file a direct appeal in this case — stating specifically that "[n]ot once did counsel discuss the insertion of a waiver in the plea agreement, and [petitioner] has had no inkling of legal matters and certainly never understood that he had agreed not to institute a direct appeal in his proceedings" — an examination of the plea transcript belies petitioner's assertion in this regard. Indeed, a review of the extensive Rule 11 plea colloquy reveals the following exchange:

> THE COURT: Do you also understand that ordinarily under the Sentencing Guidelines you would have the right to appeal your sentence; but in your plea agreement you have waived that right, you have given that right up on any ground?
>
> THE DEFENDANT: Yes, sir.

Plea Transcript, p. 28-29.

Petitioner also claims that counsel was ineffective in researching and evaluating the applicability of the career offender enhancement, as well as the additional drug quantity and firearm enhancements applied in this case. But again, a review of the record, combined with counsel's sworn affidavit, contradicts this assertion. In this regard, petitioner's counsel states, under oath, that he reviewed the PSIR with petitioner, as well as the facts surrounding petitioner's prior conviction for arson of personal property, and "concluded that a challenge to the arson conviction was without merit." Hutcheson Affidavit, ¶ 9. Counsel nonetheless moved for a downward departure at sentencing on the ground that petitioner's criminal history overstated the seriousness of his prior offenses pursuant to U.S.S.G. § 4A1.3. In the circumstances, and for the reasons set forth above,

counsel's representation of petitioner in this instance was not deficient, but instead was objectively reasonable in all respects. *See Strickland*, 466 U.S. at 688. Moreover, petitioner clearly was not prejudiced by counsel's failure to object to the drug quantity and firearm enhancements applied in this case, as the record reflects that the enhancements were fully supported by the facts knowingly and voluntarily admitted by petitioner in the Statement of Facts entered into as part of his plea agreement. *See id.*

In sum, a review of the record reveals that defense counsel provided adequate and effective assistance to petitioner at all stages of the instant proceedings "and made all significant decisions in the exercise of reasonable judgment." *Strickland*, 466 U.S. at 690. Petitioner's ineffective assistance of counsel claim is thus without merit.

**IV.**

For the foregoing reasons, and for good cause,

It is hereby **ORDERED** that petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

Should petitioner wish to appeal this Order, he must do so within sixty (60) days, pursuant to Rules 3 and 4, Fed. R. App. P.

The Clerk is directed to send a copy of this Order to petitioner and all counsel of record.

__________/s/________________
T. S. Ellis, III
United States District Judge

Alexandria, VA
March 5, 2007